UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MAIFAN SILITONGA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 3:16-CV-29-REW-EBA |
| v. ) | |
| ) | |
| KENTUCKY STATE UNIVERSITY, et al., ) | OPINION AND ORDER |
| ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiffs request "an order precluding all Defendants" from offering certain evidence and witnesses at trial. *See* DE #36 (Motion). The matter is fully briefed, *see* DE ##37, 42; *see also* DE #37, at 1-2, and ripe for consideration. For the following reasons, the Court **GRANTS** DE #36 and precludes Defendants from offering the tardily-produced items and witnesses at trial.

*Legal Principles*

The discovery process imposes on parties certain disclosure and production duties. *See, e.g.*, Fed. R. Civ. P. 26(a), (b), (e). To help police Rule faithfulness, it also provides sanctions for noncompliance. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* 37(c)(1). The Court may order additional or substitute sanctions. *Id.* 37(c)(1)(A)-(C) (also cross-referencing Rule 37(b)(2)(A)(i)-(vi)).

1

The test for Rule 37(c) exclusion "is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010); *see also Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless."). "The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'" *Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 666 F. Supp. 2d 820, 826 (N.D. Ohio 2009). "[E]xclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a) or (e)," although the Court of course retains alternative options. *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015).

What, then, does it mean for a mistake to be substantially justified or harmless? In *Howe*, the Sixth Circuit "adopt[ed]" the Fourth Circuit's five-factor test to "assess" that question. 801 F.3d at 747-48. The factors are: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Id.* at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014), and *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)); *see also, e.g.*, *Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 982 (6th Cir. 2017); *Baker Hughes Inc. v. S&S Chemical, LLC*, 836 F.3d 554, 568-69 (6th Cir. 2016); *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-

JMH-REW, 2017 WL 2295906, at *3-6 (E.D. Ky. May 25, 2017) (applying the factors); *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *10 (E.D. Ky. Oct. 6, 2016) (characterizing the five factors as "flesh[ing] out" *Bessemer*'s "simple test"). As then-District Judge Thapar put it: "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Id.* The Sixth Circuit deferentially reviews decisions on these matters under an abuse of discretion standard. *Howe*, 801 F.3d at 747.

*Analysis*

"Defendants acknowledge that Rule 26 has not been followed." DE #37, at 3. Accordingly, they seek refuge in Rule 37's "unless" clause: they endeavor to establish that the admitted discovery failures were "substantially justified" or "harmless," so as to counsel against exclusion. *See id.* at 3-5. Whether the failures were substantially justified or harmless is a question on which Defendants bear the burden. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003); *Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 656 (E.D. Ky. 2013). Because the *Howe* factors govern the analysis, the Court examines each.

**Surprise to Plaintiffs.** The Court, in these circumstances, sees plain surprise to Plaintiffs. They directly asserted their surprise. DE #36, at 6 ("This evidence and these new witnesses came as a complete surprise to Plaintiffs."). Defendants astonished Plaintiffs by, "after discovery was closed,[1] both parties were ready for trial, and all that was left to do was to submit" pretrial filings, startlingly dumping new evidence and new

---

[1] Discovery closed on August 25, 2017. DE #11, at 2. The topics Plaintiffs target, *see* DE #36, at 4-6, came post-8/25/17. Defendants do not dispute the timeline.

3

witnesses on their unexpecting opponents. *See id.*; *see also* DE #42, at 3-4. The Court recognizes Plaintiffs' surprise concerns as valid in this scenario. Eleventh-hour revelations shock the unsuspecting.

Defendants counter that "nearly all of the documents appear to have been prepared or received by Plaintiffs," and that the documents and witnesses "relate to the Land Grant Division supervised by Plaintiffs or the employment issue regarding the media and communications manager sought to be employed by Plaintiff Tsegaye." DE #37, at 3. These contentions appear plainly incorrect regarding numerous items of proof at issue. *E.g.*, DE #36, at 4-5 (Burse's supplemental responses, USDA Civil Rights Compliance File, Bailey Facebook "string"). Even if Plaintiffs did have prior knowledge of some of the items, however, they were unaware, due to nondisclosure during discovery, that Defendants intended to rely on the proof at trial. *See, e.g.*, *Abrams*, 694 F. App'x at 982 (rejecting as deficient the nonproducing party's argument that the opposing party "could easily guess . . . the substance of" tardily-disclosed evidence). Defendants, who have the burden, do not show that Plaintiffs had the at-issue proof "in [their] *possession*[.]" *Howe*, 801 F.3d at 748 (emphasis added). Plaintiffs, further, were unable to conduct discovery concerning the tardily-disclosed evidence.[2] *See Howe*, 801 F.3d at 748 (considering whether the opposing party "had a full opportunity during" discovery to explore the proof); *EQT*, 2017 WL 2295906, at *4 (finding surprise although the data

---

[2] For example, by Defendants' own account, Burse "recognized" after receiving a transcript of his deposition "that his earlier answers to interrogatories . . . and deposition testimony needed to be supplemented." DE #37, at 2. The transcript was produced on May 15, 2017, DE #17-3, at 218, *pre*-discovery close, but Burse did not supplement until September 13, 2017, nearly four months later and *post*-discovery close. *See* DE #37, at 2. That smacks of gamesmanship.

4

underlying a piece of undisclosed proof "may well have (and apparently did) originally come from" the opposing party).

Additionally, even if some items of previously undisclosed proof "relate[d] to" issues involved in the case, that itself does not show that the evidence did not surprise Plaintiffs, in context. Parties do not have free rein to use at trial the universe of proof relevant to a claim, without (at least) making proper discovery disclosures. As to the witnesses, Defendants point to "no evidence that [Plaintiffs] knew, or could have known, what these witnesses would say at trial." *Abrams*, 694 F. App'x at 982. Defendants add no further detail to these sparse, detail-free arguments, and the Court does not perceive the contentions to persuasively counter the surprise manifest in post-discovery-close document and witness dumps. The Court plainly sees surprise in Defendants' tardy production. *See id.* ("The surprise to [Plaintiffs] is obvious.").

**Ability to cure the surprise and the extent to which allowing the evidence would disrupt the trial.** Defendants offer nothing of value as to these factors. As to the ability to cure the surprise, Defendants propose that Plaintiffs simply "review" the documents "to discovery inconsistencies or similarities." DE #37, at 3-4. As to disruption, Defendants say that the evidence "will help clarify" the parties' positions and "show the history of the employment of the media and communications manager[.]" *Id.* at 4. These arguments entirely miss the mark.

Defendants' proposal that Plaintiffs merely "review" the new proof does not address an ability to cure the surprise the late disclosure created. If it did, every surprise would be curable. One harm of surprise is that the tardily-producing party's inequitable (and Rule-violative) conduct precludes the innocent opponent from fairly assessing, at the

proper procedural point of the case, the evidence and witnesses to be offered at trial. Such chicanery inhibits litigants from making rational, fully informed case-related decisions. As Plaintiffs argue, here, the Court sees "no way to cure the surprise without reopening discovery." DE #36, at 7. That solution, though, would "reward [Defendants] for [their] untimeliness and suggest that deadlines bend to a party's will." *Bentley*, 2016 WL 5867496, at *11. Defendants' meager proposal—and, indeed, the possibility of more discovery and scheduling uncertainty—"does nothing to explain [the prior] delay or account for either the deadlines that have passed or those that draw nearer each day." *Id.* Discovery has here been closed **nearly a year**, and the case has traversed plenary (two rounds of) dispositive motion practice. Reopening discovery, at this late stage, "would invite dilatory tactics and discovery abuse" and "do nothing to 'secure the just, speedy, and inexpensive determination' of this case." *Id.* (quoting Fed. R. Civ. P. 1). In these circumstances, this result "surely fails the *Howe* idea of 'cure.'" *Id.* As the Court remarked, in a similar context:

> Harm should be assessed based on the realities of the situation, the case status, and the schedule. Thus, in almost every situation of nondisclosure, a court willing to move mountains could fashion a remedy to mitigate harm. That might mean re-writing the schedule, reopening discovery, and shifting all resultant costs to the offending party. The Court does not view theoretical mitigation, only by major surgery on case posture, as fairly contemplated by the harm assessment. In other words, if the nondisclosure would require significant compromise in the status and schedule of a case, or would require consequential management in terms of discovery costs, burdens, and sequence, then the failure to disclose has indeed caused harm beyond the unilateral curative powers of any party. . . . As one court remarked, in response to the argument that reopening discovery would solve any harm: 'But, if that is so, no failure to disclose would ever be harmful because there will always be a way to reschedule something to accommodate the failure to disclose. If the court were to accept such an argument it would all but forfeit the ability to effectively manage litigation.' . . . Simply put, there is harm in case disruption, paired with the attendant negative effects on the non-defaulting and innocent party.

*EQT*, 2017 WL 2295906, at *4 (internal citations and alteration removed); *see also, e.g.*, *Pummell v. Burkes*, No. 2:15-CV-3034, 2018 WL 1875596, at *3 (S.D. Ohio Apr. 19, 2018) ("[W]hile no trial date has yet been set, permitting the supplemental witnesses to testify would be disruptive. This case has been pending for nearly two and a half years. Allowing these witnesses to testify would further delay a trial date and burden Defendants[.]").

As stated above, Defendants do not meaningfully confront trial disruption as a factor, instead simply asserting that the evidence will clarify the parties' positions and help Defendants make their case. DE #37, at 4. The Court, nevertheless, analyzes the factor as best it can. Unlike in *Howe*, the issue here has not "brought the parties closer to agreement." 801 F.3d at 748. Cross-examination at trial also would not sufficiently cure the surprise or portend a smooth trial. *See id.* The proper time for Plaintiffs to explore the import of the newly produced items and question the newly identified witnesses was during discovery. Defendants' proposal would force Plaintiffs to wait until trial to ask question and get answers to which they were earlier entitled. *See Abrams*, 694 F. App'x at 982 ("[A]t this stage of litigation, allowing the witnesses to testify would delay and disrupt the trial.").

Additionally, with summary judgment resolved and trial on the horizon, Defendants improperly seek to force Plaintiffs to invest significant time reviewing additional documents and / or deposing more witnesses, while Defendants would be able to actually prepare for trial. *See id.* ("Not only would Defendant need time to depose the four witnesses, but Defendant would also have to be given the opportunity and time to find rebuttal evidence or testimony."); *see also* DE #42, at 2 (characterizing efforts to

7

review tardily-produced discovery "as a crippling distraction from the Plaintiffs' main focus of preparing for trial"). "Case deadlines exist for many reasons, one of which is guiding the just, efficient, and methodical resolution of the case by providing the parties a level playing field for hashing out the case questions. [Defendants] would upset that balance here. The Court finds [Defendants'] proposal to be disruptive to the trial and to fair and orderly trial preparation." *EQT*, 2017 WL 2295906, at *5.

**Importance of the evidence.** Defendants characterize the evidence as "important." DE #37, at 4. Plaintiffs do not dispute this (as filing the precipitating motion itself perhaps suggests). *See* DE #42, at 7. As Plaintiffs intimate, *see id.*, evidentiary importance, "in a sense, cuts both ways. The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *EQT*, 2017 WL 2295906, at *5 (cataloguing and comparing cases). "Regardless, importance 'cannot, by itself, save improperly disclosed evidence from being found unjustified or non-harmless.'" *Id.* (quoting *Samsung Elecs. Co., Ltd. v. Nvidia Corp.*, 314 F.R.D. 190, 197 n.6 (E.D. Va. 2016)).

**Explanation for the failure to disclose.** This factor is the "one that speaks directly to whether [Defendants'] untimely disclosures were 'substantially justified.'" *Bentley*, 2016 WL 5867496, at *11. "The only explanation" Defendants offer is that KSU "did a poor job in filing and maintaining records." DE #37, at 4.[3] Sloppy recordkeeping

---

[3] Defendants, at one point, say that this singular reason concerned both "(1) the change of personnel having access to documents and information and (2) record storage in a way not conducive to orderly location and study." DE #37, at 1. Defendants gripe about turnover in the offices of KSU President and General Counsel. *Id.* at 1-2. Defendants supply no persuasive reason that the individuals occupying those offices should impact the organization and accessibility of discoverable documents. Further, as Plaintiffs rightly

manifestly is not a persuasive, substantial justification for Rule noncompliance, so the Court "cannot say that" Defendants' discovery failures were merely honest mistakes. *Bentley*, 2016 WL 5867496, at *11 (citing *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003)); *Doblar v. Unverferth Mfg. Co., Inc.*, 185 F.R.D. 258, 261-62 (D.S.D. 1999) ("[F]aulty recordkeeping is not a sufficient excuse for the failure to comply with a mandatory Federal Rule of Civil Procedure[.]").

"Explanation," in this context, "looks to the objective circumstances surrounding the nondisclosure. In that sense, 'explanation' looks more at the feasibility of full and timely disclosure than it does at parties' intent." *Samsung*, 314 F.R.D. at 199-200. Properly filing and maintaining pertinent records, thus enabling full and timely disclosure, is more than feasible—it is expected. Defendants, asserting nothing more than careless recordkeeping practices, offer no convincing explanation concerning their management of the proof at issue. Shoddy organization or general client disarray does not justify or excuse discovery defaults. This document-centered account also validates nothing about the failure to timely disclose witnesses. Accordingly, Defendants' woefully inadequate "explanation," on these facts, strongly militates toward exclusion.

All told, "[u]nder Rule 37(c)(1), forgiveness must be earned," and it "neither comes automatically nor easily." *Bentley*, 2016 WL 5867496, at *11. The issue here is straightforward: Defendants untimely produced a swath of evidence and untimely disclosed certain witnesses. The question is, what should the consequence be? The Court has considered all *Howe* factors and concludes, for the reasons discussed, that Defendants did not prove their failures to be either substantially justified or harmless. *See also*

---

point out, DE #42, at 2, Defendants' *outside* counsel has been consistent throughout the case.

*Pummell*, 2018 WL 1875596, at *2-3 (excluding belatedly-disclosed witnesses per Rule 37 & *Howe*); *EQT*, 2017 WL 2295906, at *3-6 (excluding belatedly-produced proof per Rule 37 & *Howe*). Accordingly, the consequence should be and is the "usual" Rule 37 remedy: exclusion of the tardily-produced proof.[4] *See Howe*, 801 F.3d at 747.

*Conclusion*

For these reasons and on these terms, the Court **GRANTS** DE #36.

This the 20th day of August, 2018.

Signed By:
*Robert E. Wier*
United States District Judge

---

[4] The Court considered the totality and concludes that a sanction less than exclusion is not adequate. In these circumstances, a mere fee award or jury advisement would insufficiently account for the Rule 26 and 37 values, and no other (b)(2)(A) sanction fits these facts. The Sixth Circuit instructs that exclusion is "mandatory" and "usual." Defendants risked an exacting sanction when they failed to seasonably comply with the most straightforward of discovery obligations. Exclusion, in the Court's assessment, "fit[s] the crime" of such cavalier discovery disobedience. *ECIMOS, LLC v. Nortek Global HVAC, LLC*, ___ F. App'x ___, ___, No. 17-6067, 17-6123, 17-6124, 17-6125, 2018 WL 2459915, at *1 (6th Cir. June 1, 2018).